UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERRY SWACK, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CREDIT SUISSE FIRST BOSTON and MARK WOLFENBERGER,<br><br>Defendants. | C.A. No. 02-11943-DPW |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

Lead Plaintiff Terry Swack ("Lead Plaintiff" or "Swack") submits this memorandum of law in support of her motion for an order (I) certifying this action as a class action, (ii) certifying a class (the "Class") consisting of all purchasers of Razorfish Inc. during the period from May 24, 1999 through May 4, 2001, inclusive, (the "Class Period"), (iii) appointing Terry Swack as Class Representative, and (iv) appointing Class counsel.

**PRELIMINARY STATEMENT**

This securities fraud class action arises out of the defendants' false and misleading representations to the investing public in equity research reports concerning the stock of Razorfish, Inc. ("Razorfish"). As detailed in the Second Consolidated Amended Class Action Complaint ("Complaint") filed October 20, 2003, defendant Credit Suisse First Boston LLC ("CSFB") issued false and misleading analyst reports with buy recommendations and price targets substantially above the then current market price of Razorfish shares. Defendant Mark Wolfenberger ("Wolfenberger") was the CSFB analyst who authored the reports. The research reports are alleged to be false and misleading

because, *inter alia*, they were not issued in good faith as objective, independent investment advice to be relied up by investors; Wolfenberger's ratings and price targets for Razorfish were not issued because he believed they were justified; the analysts in CSFB's Tech Group were not independent and objective in their research because of control of the analysts by investment bankers; the compensation of research analysts created conflicts of interest because their compensation was directly related to the investment banking revenue they helped to generate; companies were promised favorable research if they gave investment banking business to CSFB; and CSFB's Tech Group had an "unwritten" rule that analysts should not say anything negative about an investment banking client or potential client.  These conflicts of interest and impairment of the independence and objectivity of analysts publishing CSFB's research were not disclosed to investors.  The Complaint also details how defendant Wolfenberger solicited the opinion of Razorfish executives as to what rating to give Razorfish, and how he worked actively in conjunction with Razorfish to boost the price of Razorfish stock.

A motion to dismiss the Complaint was denied by the Court in a lengthy Memorandum and Order issued on September 21, 2004.

The Motion for Class Certification should be granted because this litigation meets each of the requirements of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. First, the numerosity requirement of Fed. R. Civ. P. 23(a)(1) is met because there are at least thousands of Class Members, who, like the Lead Plaintiff, purchased Razorfish common stock during the Class Period, and have suffered financial losses as a result. Second, there are common questions of law and fact under Fed. R. Civ. P. 23(a)(2) because the Complaint alleges that all Class Members were harmed by the same or similar

conduct, i.e., Defendants' alleged violations of the Securities Exchange Act of 1934 through material false or misleading representations in CSFB's research report on Razorfish. Third, Lead Plaintiff's claims are "typical" of the claims of the Class under Fed. R. Civ. P. 23(a)(3) because she, like all Class Members, purchased shares of Razorfish stock at artificially inflated prices due to Defendants' securities law violations, and suffered damages as a result thereof. Fourth, Lead Plaintiff will fairly and adequately represent the interests of the Class under Fed. R. Civ. P. 23(a)(4) because her claims are not antagonistic to the claims of the Class, and she has retained competent counsel. Finally, the litigation also meets the requirements of Fed. R. Civ. P. 23(b) because common issues predominate over any individual issues, and because a class action is superior to other methods of adjudication in that a class action is the only realistic opportunity for Class Members to recover damages for Defendants' wrongdoing.

## **ARGUMENT**

**I.      General Legal Principles Applicable to Class Certification**

Class certification is a two-step analysis under Rule 23 of the Federal Rules of Civil Procedure. First, the proposed Class Representative must meet the requirements of Fed. R. Civ. P. 23(a)(1)-(4), commonly known as "numerosity," "commonality," "typicality" and "adequacy." *Smilow v. S.W. Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). Second, the proposed Class Representative needs to satisfy one of the three requirements of Fed. R. Civ. P. 23(b), which Lead Plaintiff can satisfy by establishing (I) that questions of law or fact common to the members of the class predominate over any questions affecting only individual

3

members and (ii) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 69 (D. Mass. 1999).

Class actions have long been considered a necessary and effective vehicle for resolution of securities law claims. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class actions allow the "plaintiff to pool claims which would be uneconomical to litigate individually . . . [M]ost of the plaintiffs would have no realistic day in court if a class action were not available"). "Courts have expressed a general preference for class certification in securities fraud cases, based on a policy favoring enforcement of the federal securities laws, and recognition of the fact that class actions may be the only practicable means of enforcing investors' rights." *Priest v. Zayre Corp.*, 118 F.R.D. 552, 553-54 (D. Mass. 1988) (citations omitted). Due to the importance of the class action device in securities fraud suits, courts have uniformly held that Fed. R. Civ. P. 23 is to be construed liberally in such cases. *Lessard v. Metropolitan Life Ins. Co.*, 103 F.R.D. 608, 610 (D. Me. 1984) ("Rule 23(a) should be liberally construed in order not to undermine the policies underlying the class action rule."). The determination of whether a class should be certified is not an inquiry into the merits of the plaintiff's case, but is limited to whether the allegations in the Complaint satisfy the requirements of Fed. R. Civ. P. 23. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974); *Priest*, 118 F.R.D. at 554 ("Class certification is not an appropriate stage at which to address the merits of the lawsuit."). In a doubtful case, any error, if there is to be one, should be committed in favor of allowing a class action. *Payne v. Goodyear Tire & Rubber Co.*, 216 F.R.D. 21, 25 (D. Mass. 2003).

As discussed below, class certification is appropriate in this case and the motion for class certification should be granted.

## II.     The Requirements Of Fed. R. Civ. P. 23(a) Are Satisfied.

Each of the requirements contained in Fed. R. Civ. P. 23(a) has been satisfied in this action.

### A.     The Class Is So Numerous That Joinder Of All Members Is Impracticable

The "numerosity" requirement under Fed. R. Civ. P. 23(a)(1) has been met here because the number and diverse location of putative class members renders it impractical to join all of the Class Members in one lawsuit. In determining whether a proposed class meets the numerosity requirement, "courts may draw reasonable inferences from the facts presented to find the requisite numerosity." *McCuin v. Secretary of Health & Human Servs.*, 817 F.2d 161, 167 (1st Cir. 1987). Courts generally assume that the numerosity requirement is met in cases involving nationally traded securities. *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 306 (D. Mass. 1987). In this case, although the exact size of the Class is not yet known, the Complaint alleges that there are thousands of members of the Class located throughout the United States, and that during the Class Period, Razorfish stock was actively traded on the National Association of Securities Dealers Automated Quotation (NASDAQ). (¶ 14[1]) From these factual allegations, it can be strongly inferred that the size of the Class is sufficiently numerous that it would be impractical to join all of the claims of Class members in one lawsuit. See *Kirby,* 116 F.R.D. at 306; see also

---

[1]     "¶" refers to paragraphs in the Complaint.

5

*Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997) (numerosity met where class size was only 480 members).

### B. There Are Common Issues of Law and Fact

The "commonality" requirement under Fed. R. Civ. P. 23(a)(2) has also been satisfied. It is well-settled that the "commonality" requirement is satisfied where the Complaint alleges common legal or factual issues. *Priest*, 118 F.R.D. at 554. Here, the Complaint alleges the following common questions of law and fact, among others, that exist as to all members of the Class:

(i) whether Defendants' research reports on Razorfish contained false or misleading statements and/or failed to disclose material facts;

(ii) whether the so-called truth-on-the-market defense is applicable;

(iii) whether Defendants' conduct constitutes a "scheme" and/or "course of business" under Rule 10b-5(a) and (c);

(iv) whether Defendants acted with <u>scienter</u>;

(v) whether Defendants' conduct caused the class members' losses;

(vi) whether the Class has sustained damages, and the measure of such damages.

Such common questions have previously been found sufficient to establish commonality in this district. See *Priest*, 118 F.R.D. at 554; *Kirby*, 116 F.R.D. at 306.

### C. Lead Plaintiff's Claims Are Typical of the Claims of the Class

Lead Plaintiff has also met the typicality requirement of Fed. R. Civ. P. 23(a)(3), as her claims are typical of the claims of the absent Class members. Lead Plaintiff, like the absent Class members, purchased Razorfish stock during the Class Period at prices that

were artificially inflated due to Defendants' material misrepresentations, and suffered losses as a result thereof. In addition, Lead Plaintiff's claims are based upon the same facts and legal theories as the rest of the Class.  So long as there is a nexus between the class representative's claims and the common questions of fact or law that unite the class, typicality is satisfied.  *Priest*, 118 F.R.D. at 555 ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent members.") (citation omitted). Factual differences do not render a claim atypical if the claim arises from the same event, practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.  *Wilcox v. Petit*, 117 F.R.D. 314, 318 (D. Me. 1987).[2]

### D. **Lead Plaintiff Will Fairly and Adequately Represent the Interests of the Class**

It is well-settled that a proposed Class Representative satisfies the "adequacy" requirement under Fed. R. Civ. P. 23(a)(4) where the proposed Class Representative (i) does not have interests that are antagonistic to the interests of the Class and (ii) has retained qualified counsel. *Kirby*, 116 F.R.D. at 308; see also *Priest*, 118 F.R.D. at 556

---

[2] Defendants may attempt to challenge Lead Plaintiff's typicality on the grounds that she acquired Razorfish shares when she sold a business to Razorfish, not by purchase on the open market. But this is a difference without a distinction for purposes of this case. It is well settled that an acquisition of stock in connection with the sale of a company is a "purchase" within the meaning of Section 10b of the Securities Exchange Act of 1934 and Rule 10b-5.  *See, e.g., Reisman v. KPMG Peat Marwick LLP,* 965 F.Supp. 165, 167 and 169 (D. Mass. 1997).  Section 10b of the 1934 act prescribes fraud "in connection with the purchase or sale of any security".  The term "sale" is defined in Section 2(a)(3) of the Securities Act of 1933 as including "every contract of sale or disposition of a security . . . ."  The definition of "sale" encompasses transactions such as mergers. Hazen*, Treatise on the Law of Securities Regulation*, 395 (4th ed. 2002).  Moreover, it is a common practice for class definitions to include all persons who purchased the security in question during the class period, and not to limit the class to purchasers in the open market.  Swack has submitted an affidavit herewith, attesting that she had no nonpublic information concerning Razorfish and that she, like all other class members, relied on the integrity of the market price for Razorfish stock when she acquired her shares.

("Inquiries into the adequacy of representation should focus on the named plaintiffs' ability to prosecute the action vigorously through qualified counsel and their lack of conflicting interest with unnamed class members.")

Lead Plaintiff will fairly and adequately represent the interests of the Class. First, her interests are perfectly aligned with the interests of the Class. Like all Class Members, she purchased Razorfish stock at prices that were inflated by Defendants' securities law violations, and she seeks to prove that the same wrongdoing that caused her damages also caused the damages suffered by the Class. Second, as evidenced by the resume attached as Exhibit A, Lead Plaintiff has retained counsel with substantial expertise in class action litigation, thereby insuring that the litigation will be vigorously prosecuted. Indeed, the counsel selected by Lead Plaintiff have already vigorously prosecuted this case for over two years.

### III.     The Requirements Of Fed. R. Civ. P. 23(b)(3) Have Been Met

The requirements of Fed. R. Civ. P. 23(b)(3) have also been satisfied because common questions of law and fact predominate over individual questions, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

#### A.     Common Issues Predominate

It is well-established that in determining whether common questions predominate, the Court's inquiry should be directed primarily toward the issue of liability. Indeed, "[w]here, as here, common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied." *Smilow*, 323 F.3d at 40; *In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 345 (D. Mass. 2003) (quoting same). When common

questions represent a significant aspect of a case and they can be resolved in a single action, class action status is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d, § 1788 at 528 (1986). The common questions, however, need not be dispositive of the entire action, because "predominate" as used in Fed. R. Civ. P. 23(b)(3) should not be equated with "determinative." *See Smilow*, 323 F.3d at 39 ("Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class"). *See* also *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 135 (2nd Cir. 2001).

In this case, common issues predominate over individual questions. The litigation will be focused on whether the analyst reports in question were false or misleading, the state of mind of Wolfenberger, whether Defendants acted with *scienter,* and whether Class Members suffered damages and how much. These issues of liability and damages are common for all Class Members. Thus, this case illustrates the principle that the predominance requirement is "readily met" in many securities fraud actions. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 592, 625, 117 S.Ct. 2231 (1997).

### B.     A Class Action Is Superior To Individual Actions

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of this controversy because, absent a class action, this Court would be faced with the task of potentially litigating numerous lawsuits:

> [T]he benefits to the large number of class members, many of whose claims are so small that their size does not provide the impetus to bring individual actions, clearly outweigh any problems which may arise in the management of the class action. Economy will undoubtedly be achieved. Not only economy which will benefit members of the class, but economy which will benefit the judicial system as well.

*Kirby*, 116 F.R.D. at 311 (quoting *Berenson v. Faneuil Hall*, 100 F.R.D. 468, 471 (D. Mass. 1984)); see also *Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of ... groups of people whose individual claims would be too small to warrant litigation."); *Amchem Prods.*, *supra,* 521 U.S. at 617 ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."); *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

### IV. <u>Shapiro Haber & Urmy LLP Should be Appointed Counsel for the Class</u>

The 2003 amendment to Rule 23(c) provides that any order certifying a class action must appoint class counsel under Rule 23(g). Rule 23(g)(1)(C) sets forth several factors that the Court must consider in appointing class counsel. Each of these factors warrants appointment of Shapiro Haber & Urmy LLP.

The first factor to be considered is "the work counsel has done in identifying or investigating potential claims in the action". Shapiro Haber & Urmy was retained by Lead Plaintiff Terry Swack at the outset of the litigation and it identified and investigated the claims asserted in this action. Shapiro Haber & Urmy prepared and filed the only complaint in this action, as well as the amended complaints.

The second factor under Rule 23(g)(1)(C)(i) is "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action". The firm's practice has focused on class action litigation, and particularly securities fraud class actions, for over 20 years. The firm has been appointed lead counsel in numerous cases. The firm is particularly experienced with claims involving analyst conflicts of interest as in the case at bar. The firm has been appointed Co-Chair of the Executive Committee in the consolidated Merrill Lynch analyst report cases pending in the Southern District of New York. The firm has been appointed lead counsel in two other analyst conflict of interest cases in this district.

The third factor is "counsel's knowledge of the applicable law". As noted, the firm has substantial experience with securities fraud class actions, and it is knowledgeable about the applicable law. The firm's knowledge is demonstrated, for example, by its successful opposition to the motion to dismiss this action. A copy of the firm's resume is being submitted herewith.

The fourth factor under Rule 23(g) is "the resources counsel will commit to representing the class". The firm has already demonstrated its willingness and ability to commit the necessary resources, by opposing defendants' complex motion to dismiss. The firm has litigated numerous cases as large and complex, or larger, than the instant case.

Rule 23(g)(1)(C)(ii) provides that the Court may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class. Lead Plaintiff is not aware of any other pertinent matter that detracts from the firm's ability to represent the interests of the class.

**CONCLUSION**

Defendants' attack on class certification should be recognized for what it is.

> In opposing class certification, defendants do not truly seek separate adjudications of each individual claim. In reality, they seek *no* adjudication....[I]f certification is denied, defendants will have essentially defeated the claims without ever having been compelled to defend the suits on the merits.

*In re Initial Public Offering Sec. Litig.,* 2004 WL 2297401 at *2 (S.D.N.Y. Oct. 13, 2004).

For the reasons discussed above, Lead Plaintiff respectfully requests that this Court grant her motion for an order pursuant to Rule 23(c), (i) certifying this action as a class action, (ii) certifying a Class consisting of all purchasers of Razorfish common stock from May 24, 1999 through May 4, 2001, inclusive (the "Class Period"), (iii) appointing Lead Plaintiff as Class Representative and (iv) appointing Shapiro Haber & Urmy LLP as Class Counsel.

Dated: December 29, 2004

Respectfully submitted,

/s/ Thomas G. Shapiro

Thomas G. Shapiro (BBO# 454680)
Theodore Hess-Mahan (BBO# 557109)
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Tel:   (617) 439-3939